UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ROBERT WHITE, PRO SE,

Petitioner,

vs.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS,
THE HONORABLE HENRY J. BOROFF,
BANKRUPTCY CASE NO. 03-44906-HJB
et. al,

Respondents.

District Court Case No. 05-40104-FDS

_____

MOTION FOR LEAVE TO FILE SECOND AMENDMENT TO WRIT OF HABEAS CORPUS

Petitioner requests leave to file this second amendment to his Writ of Habeas Corpus.

THE BANKRUPTCY COURT VIOLATED PETITIONER'S SIXTH AMENDMENT RIGHT
TO A JURY TRIAL

According to Bloom v. Illinois, 391 US 194, a charge of criminal contempt affords the accused the right to a jury trial:

> If the right to jury trial is a fundamental matter
> in other criminal cases, which we think it is,
> it must also be extended to criminal contempt
> cases.

While there is no birght line rule distinguishing petty from serious contempt, the length of the sentence is an appropriate gauge:

> ... when the legislature has not expressed a
> judgement as to the seriousness of the offense by
> fixing a maximum penalty which may be imposed, we
> are to look to the penalty actually imposed as the
> best evidence of the seriousness of the offense.

Petitioner's contempt charge has no maximum sentence and Petitioner

has been sentenced to an indefinite period of time.

Actually, there is no bright line rule distinguishing civil from criminal contempt; there are no maximum penalties for either offense. In United States v. Marquardo, 149 F.3d 36, the First Circuit recognized that the same contemptuous act may be regarded a civil or criminal contempt, or both. The nature of the contempt is to be determined by the purpose and effect of the sentence, not the title of the contempt. In both Bloom v. Illinois and United States v. Marquardo it was the outcome of the sentence and not the act of contempt which distinguished petty from serious contempt and civil from criminal contempt. Therefore, the accused does not know he is entitled to a jury trial until after he has been denied one, and sentenced.

There can be no clearer proof of the Bankruptcy Court's intention to punish Petitioner for criminal contempt rather than simply coerce Petitioner into compliance with its orders than the Bankruptcy Court's refusal to release Petitioner at his June 12, 2005, re-incarceration hearing after Petitioner pledged to make $500 per month payments toward his sanctions. If the Bankruptcy Court was truly trying to coerce Petitioner into paying the sanctions, it ignored its opportunity.

## THE ARBITRARY DISTINCTION BETWEEN CIVIL AND CRIMINAL CONTEMPT VIOLATES THE FIFTH AND SIXTH AMENDMENTS

In Petitioner's case the same contemptuous offense could be prosecuted as civil or criminal contempt, where the criminal charge would have afforded Petitioner a jury trial. This arbitrary choice by the Bankruptcy Court creates too much opportunity for the Bankruptcy Court to abuse its summary powers acting as accuser, trier,

2

and punisher.  As stated in <u>Bloom v. Illinois</u>:

> Indeed in contempt cases an even more compelling
> argument cana be made for providing a right to a
> jury trial as a protection against the arbitrary
> of official power.

It is inherently unfair for the Bankruptcy Court to prosecute

Petitioner for civil contempt instead of criminal contempt, when the

penalt;y for either can and will probably be the same, just so the

Bankruptcy Court can avoid a jury trial, with its uncertain verdict,

in order to insure a guilty verdict by an exercise of the Bankruptcy

Court's summary powers.  These courtroom realities set up a serious

breach of the Sixth and Fourteenth Amendments by denying the accused

a fair and impartial trial and by denying equal treatment under the

law.  This is particularily true in Petitioner's case where the

Bankruptcy is accustomed to exercising "broad equitable powers"

instead of exercising the same disciplined Constitutional restraint

exercised by Federal Trial Court Judges.

### EVEN IF PETITIONER IS GUILTY OF CIVIL CONTEMPT
### HIS SENTENCE IS DISPROPORTIONAL
### TO HIS CRIME

The Bankruptcy Court sanctioned Petitioner $2,500 for filing two

motions the Bankruptcy Court deemed to be frivolous.  The Bankruptcy

Court also sanctioned Petitioner another $1,000 for being in

contempt for not paying the original sanction.  Then the Bankruptcy

Court started incarcerating Petitioner several weeks at a time for

the contempt.  The Bankruptcy Court originally sanctioned Petitioner

$2,500 according to the rationale that Petitioner caused the estate

to incur $2,500 in attorney fees defending against Petitioner's

motions.  However, the Bankruptcy Court sanctioned Petitioner

without knowing the amount of dividend remaining in the estate and

3

without knowing the percent of Petitioner's claim comprising the dividend. Petitioner contends that his portion of the remaining dividend is greater than $2,500, making an offset of Petitioner's sanctions against his portion of the dividend a much more reasonable and less harsh punishment.

The Bankruptcy Court could have applied any number of less severe punishments against Petitioner. The Bankruptcy Court could have allowed Petitioner to make payments toward the sanctions, since even the Bankruptcy Court realizes Petitioner can't pay a $2,500 sanction all at once; or, the Banakruptcy Court could have allowed Petitioner to offset his sanctions against the dividend. Instead, the Bankruptcy Court harshly punished Petitioner when the Bankruptcy Court had already achieved its goal of curtailing Petitioner from filing further motions.

## PRAYER

Petitioner asks this Court to release Petitioner from incarceration pending Petitioner's appeal of the Bankruptcy Court's sanctions. Petitioner also asks this Court to apply Petitioner's time served toward the sanctions, satisfying the Banakruptcy Court's sentence.

Respectfully submitted on this 25th day of July, 2005, by


Robert White
Robert White, Pro Se


4