## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Case No. _4:05 CV 40104-FDS_

In Re:  ROBERT WHITE, PRO SE,

Petitioner;

vs.

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MASSACHUSETTS,
THE HONORABLE HENRY J. BOROFF,
Et. al

**BANKRUPTCY CASE NO. 03-44906-HJB,**

Respondents.

---

# Petition for Writ of Mandamus

## To the Honorable F. Dennis Saylor

### Asking Waiver of Fees and Cost in Appeal of Bankruptcy Court Contempt Orders

Now comes Petitioner, Robert White (hereafter "White"), pro se, an unsecured creditor

in the above captioned bankruptcy case, who has recently filed a notice of appeal to the District

Court regarding the Bankruptcy Court's final contempt orders, and who now asks the **Honorable**

**F. Dennis Saylor** to waive White's appellate fees and transcript costs of $760 in White's appeal

of the Bankruptcy Court's contempt orders.  White filed a motion to proceed *in forma pauperis*

in the Bankruptcy Court, which was denied [1].  The Bankruptcy Court denied White's motion to

---

[1]   Bankruptcy Court case number 03-44906, docket item 727, March 20, 2006, Memorandum of Decision
denying  White's motion to proceed in  forma pauperis on appeal.

1

proceed *in forma pauperis*, proclaiming White to be a malicious and vexatious litigant [2] for filing his appeal, and finding White not to be impoverished [3]; concluding that White does not deserve to proceed *in forma pauperis* [4]. White can not afford the fees and transcript costs necessary to proceed on appeal; therefore, White has no other remedy at law except to ask this court to waive White's appellate fees and transcript costs.

## This Court is Familiar With This Case

To remind this Court, White seeks relief in this Court, instead of Judge Nathaniel M. Gorton's Court, because White recently filed a similar motion to proceed *in forma pauperis* in this Court [5], at the behest of the Circuit Court, whereby White asked this Court to waive the filing fee and cost associated with White's appeal of this Court's dismissal of White's Writ of Habeas Corpus, case number 05-40104-FDS. White's Writ of Habeas Corpus addressed the Bankruptcy Court's sentencing and incarceration of White over the same contempt citation which White now appeals based on his actual innocence. This Court is already familiar with the issues in this contempt matter and is in the best position to review whether White's fees and costs on appeal should be waived.

## The Bankruptcy Court Finally Accuses White of Criminal Contempt

White's Writ and Certificate of Appealability raised numerous constitutional issues, as

---

[2] Bankruptcy Court Memorandum of Decision, pg. 18, pp. 2.

[3] Bankruptcy Court Memorandum of Decision, pg. 17, pp. 2.

[4] Bankruptcy Court Memorandum of Decision, pg. 18, pp. 2.

[5] White's financial declaration attached to both motions to proceed *in forma paupers* are identical.

will White's appeal of the Bankruptcy Court's contempt orders. The Bankruptcy Court

sanctioned White for filing two frivolous motions and then held White in contempt and fined

and incarcerated White when he was unable to pay those sanctions.  In its Memorandum of

Decision the Bankruptcy Court retroactively accuses White of the criminally contemptuous

behavior of being a malicious and vexatious litigant [6] , all the while the Bankruptcy Court

claimed to be prosecuting White for civil contempt, while punishing White for criminal

contempt, violating White's constitutional rights, which is the essence of White's appeal.


### Neither This Court Nor the District Court Found White to be Malicious or Vexatious

White is not a malicious and vexatious litigant.  Even though White's two appeals to the

District Court were unsuccessful ( both of which the Bankruptcy Court retroactively calls

malicious and vexatious), the District Court never suggested White was frivolous, malicious, or

vexatious, and instead ruled:

> This Court is sympathetic to the inability of the unsecured creditors to collect a
> fair dividend but, ...[7]

and,

> Although the fee seems excessive to this Court under the circumstances, the
> Bankruptcy Judge was in a better position to assess its reasonableness and,
> furthermore, the amount of the fee is not at issue in this appeal.[8]

Similarly, this Court reviewed White's Writ of Habeas Corpus and dismissed it as moot because

White was released from prison, not reaching the merits; however, this Court did not indicate

---

[6] Bankruptcy Court Memorandum of Decision, pg. 18, pp. 2.

[7] November 4, 2004, District Court Memorandum and Order on White's 1st appeal of the sale order,
District Court case number 03-40279-NMG, pg. 9, pp. 3.

[8] September 12, 2005, District Court Memorandum and Order on White's 2nd appeal of Motion to Vacate
sale order, District Court case number 04-40208-NMG, pg. 3, fn 1.

3

that White was a frivolous, malicious, or vexatious litigant.

## White is Indeed Impoverished

Additionally, contrary to the Bankruptcy Court's Memorandum, White is indeed impoverished. White's income is under 150% of the national poverty guideline for his family size. White's income qualifies him to proceed *in forma pauperis*. The Bankruptcy Court's Memorandum of Decision misinterprets White's income and expense affidavit, saying "His monthly income ($1,605.00) exceeds his monthly expenses ($1,195.00) by $410." [9] First, and most obviously, the poverty guideline is established by income not expenses; White's income for a family his size qualifies him to proceed *in forma pauperis*. Secondly, White's monthly family income is $1,655 and White's monthly family expenses are $1,512; creating a surplus of $143, not the $410 surplus the Bankruptcy Court calculates. White needs to save $143 per month in transportation expense for airfare to fly from California to Massachusetts, and back, to attend the next of numerous proceedings the Bankruptcy Court has preciously ordered White to attend.

## The Summary Power of Contempt Is Suspect for Violating Constitutional Rights

Few powers of the court are more suspect than the summary powers of contempt due to the unique situation in which the court is not sitting as an independent and impartial trier of the facts. The Bankruptcy Court accused, tried, convicted, and sentenced White in a criminal contempt proceeding, labeling White's contempt as civil, without offering White a way to purge himself of contempt, without conducting a jury trial, sanctioning and incarcerating White repeatedly for the same contempt, making White testify against himself without the benefit of

---

[9] Bankruptcy Court Memorandum of Decision, pg. 17, pp. 2.

4

counsel, all for the express purpose of restricting White's right to file motions in the Bankruptcy Court. White contends the Bankruptcy Court violated his rights protected by the 1st, 4th, 5th, 6th, and 8th amendments to the US Constitution.

### The Bankruptcy Court Finally Admits It Wouldn't Let White Purge Himself

No further proof need be offered that White was prosecuted for criminal contempt, and not offered a way to purge himself of contempt prior to incarceration, than the Bankruptcy Court's own admission in its Memorandum that White was released after six weeks of incarceration when the Bankruptcy Court finally offered White a way to convey ownership of his vehicles to the trustee [10]. The Bankruptcy Court rejected this same offer by White on July 12, 2005 [11], and instead incarcerated White, denying White the option to make payments toward the sanctions or convey ownership of his vehicles to the trustee. The Bankruptcy Court was simply predetermined to punish White for being a malicious and vexatious litigant, something that does indeed qualify as criminal contempt, for which the accused deserves all the constitutional protections afforded a party accused of a crime.

### The Bankruptcy Court Finally Admits it Prosecuted White for Criminal Contempt

No further proof need be offered that White was prosecuted for criminal contempt than the Bankruptcy Court's own admission that "It is clear that the various forms of relief requested by White have long ago moved beyond frivolous to the malicious and vexatious."[12] The

---

[10] Bankruptcy Court Memorandum of Decision, pg. 14, pp. 2.

[11] July 12, 2005 contempt hearing, Bankruptcy Court case number 03-44906, yet to be transcribed.

[12] Bankruptcy Court Memorandum of Decision, pg. 18, pp. 2.

Bankruptcy Court's Memorandum finally reveals that the Court considered White guilty of

criminal contempt all along, without affording White the rights guaranteed to a party prosecuted

by the US government. Obviously the Bankruptcy Court can find a party guilty of contempt

when it exercises its summary power to accuse, try, convict, and sentence a party after it

predetermined the party was guilty.

## The Summary Powers of Contempt Must Be Reviewed

According to Federal Bankruptcy Rule 9033 White was entitled to a much more formal

review of the Bankruptcy Court's contempt citation than he received by this Court under White's

Writ of Habeas Corpus; and now the Bankruptcy Court is attempting to obstruct White's right to

review on appeal. Federal Bankruptcy Rule 9033 provides:

### Rule 9033. Review of Proposed Findings of Fact and Conclusions of Law in Non-Core Proceedings
(a) Service.

In non-core proceedings heard pursuant to 28 U.S.C. § 157(c)(1), the bankruptcy judge shall file proposed findings of fact and conclusions of law. The clerk shall serve forthwith copies on all parties by mail and note the date of mailing on the docket.

(b) Objections: time for filing.

Within 10 days after being served with a copy of the proposed findings of fact and conclusions of law a party may serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection. A party may respond to another party's objections within 10 days after being served with a copy thereof. A party objecting to the bankruptcy judge's proposed findings or conclusions shall arrange promptly for the transcription of the record, or such portions of it as all parties may agree upon or the bankruptcy judge deems sufficient, unless the district judge otherwise directs.

...

(d) Standard of review.

The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the

6

proposed findings of fact or conclusions of law, receive further evidence, or
recommit the matter to the bankruptcy judge with instructions.

White's Writ of Habeas Corpus to this Court fulfilled all his obligations under Rule 9033: 1) it

was filed within 10 days of the contempt citation incarcerating White, 2) it identified the factual

and legal controversies of the Court's findings, and 3) it was served on the parties and filed both

in the Bankruptcy Court and District Court.

White's Writ of Habeas Corpus served the same procedural function as a request for

review under Rule 9033. White never received a review "de novo" as required by Rule 9033,

nor did White get an opportunity to attend an evidentiary hearing reviewing the Bankruptcy

Court's actions, nor were the transcripts to the contempt hearings prepared.

## Conclusion

White is not the Petitioner in this bankruptcy, and he is not a Plaintiff who has filed

multiple vexatious lawsuits. White is an unsecured creditor who has been decimated by the

debtor's poor business practices and by the Bankruptcy Court's intolerance of a party who insists

on exercising all his constitutional rights. The Bankruptcy Court uses too broad a retroactive

stroke painting White as a vexatious litigant. White is entitled to a much more thorough review

of the Bankruptcy Court's summary power of contempt than has yet been conducted. White

simply asks for these rights now, on appeal.

Respectfully submitted on this 26th day of Marcy, 2006, by

Robert White - Pro Se
243-A N. Maple
Manteca, CA 95336
Ph: (209) 825-6115

7

# United States Bankruptcy Court

## District of Massachusetts

|  |  |  |
|---|---|---|
| In re: | ) )  ) | Chapter 7<br>Case No. 03-44906-HJB |
| CK Liquidation Corporation<br>(f/k/a/ CADKEY Corporation), | ) ) ) ) | |
| Debtor | ) ) | |

## MEMORANDUM OF DECISION

Before this Court is a "Motion to Proceed In Forma Pauperis" filed by Robert White, a creditor in this case.  Although rulings on such motions are typically informed by a limited and short history of prior proceedings, the appropriate disposition of this motion requires its review in proper extended context.

I.      BACKGROUND

CK Liquidation Corporation, formerly known as Cadkey Corporation (the "Debtor"), filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, see 11 U.S.C. § 101, et. seq., on August 22, 2003.  The Debtor, a manufacturer and distributer of software used in the construction industry, filed the Chapter 11 case with the goal of selling its assets as a going concern in order to maximize its value and retain its employees.

1

On August 29, 2003, the Debtor filed a motion seeking leave to sell its assets free and clear of all liens, claims, encumbrances and other interests (the "Sale Motion"). The Debtor also requested pre-approval of certain bidding procedures (the "Proposed Bidding Procedures") relative to the sale. A hearing on the Proposed Bidding Procedures was scheduled for September 9, 2003.

On September 4, 2003, the United States trustee filed notice of her appointment of an Unsecured Creditors Committee. That Creditors Committee, comprised of four (4) members, included Nded, Inc. of Boise City, Idaho. Nded, Inc. was represented on the Creditors Committee by its President, Robert White ("White").

On September 8, 2003, Microcontrol Systems, Inc. (a secured creditor), Harold Bowers (the largest unsecured creditor) and the Creditors Committee each filed an objection to the Proposed Bidding Procedures. On that date, White also filed an objection to the Proposed Bidding Procedures. In that objection, which was filed on White's behalf by an attorney well experienced in bankruptcy law, White represented that he was a creditor of the estate in his *individual* capacity.

White's objections were similar to the other three objections – complaining, *inter alia*, that the terms of the proposed sale were not in the best interest of creditors and that immediate sale of the assets was not warranted or necessary at that time. White did not disclose in his objection that he was trying to establish an investment group so that he could bid to purchase the assets himself.[1]

---

[1] Such a bid would necessarily put him in conflict with his fiduciary duties as a member of the Creditors Committee.

2

On September 12, 2003, this Court issued an order establishing the bidding procedures for the sale, sustaining in part and overruling in part, the various objections. That order also set the sale hearing for October 20, 2003.

On October 9, 2003, White filed an objection to the proposed sale. He complained that the sale of the assets was "chilled" by ownership claims made by Harold Bowers to certain intellectual property which the Debtor intended to sell. The Creditors Committee was also concerned with the intellectual property issues, and requested that this Court determine the extent of Bowers' interest prior to the sale. White asked instead for a 30-60 day continuance of the sale date. White failed to expressly indicate that he was preparing a sale bid himself. Attached, however, to White's objection were emails sent to the Debtor's dealers asking for revenue projections that White could employ relative to his "business plan" and "joint venture."

The problems associated with the Bowers ownership claims were ultimately resolved for the purpose of the sale hearing.[2] On November 6, 2003, after an

---

[2] This was not without some difficulty. Bowers filed a motion with the District Court to withdraw the reference of the bankruptcy case to the District Court. The District Court (Gorton, J.) temporarily withdrew the reference long enough for Bowers, the Debtor and the Creditors Committee to come to an agreement relative to amended sale procedures. Pursuant to those procedures, the Bowers ownership claim was to have been left open until after the winning bidder was announced. However, after further extensive negotiation between the parties, Bowers agreed to accept $750,000.00 from the winning bidder, Kubotek Corporation, in addition to any dividend on his claim against the bankruptcy estate, and release Kubotek Corporation and others from all of the ownership claims. But after the sale, Bowers initially declined to sign the settlement documentation. Then, after complying, receiving the $750,000.00 payment and releasing Kubotek Corporation from any claims, Bowers disavowed the settlement, maintaining that he (and this Court) had been defrauded by counsel for the Debtor and counsel for the Creditors Committee as to the dividend that unsecured creditors could expect on their claims. He filed a motion asking that the Sale Order be vacated. After a two-day trial, this Court determined that Bowers' allegations of fraud were frivolous, but has not yet entered an order finally denying the motion, pending requests by various parties for the imposition of monetary sanctions against Bowers under Federal Rule of Bankruptcy Procedure

3

evidentiary hearing, this Court approved a sale of the Debtor's assets to Kubotek

Corporation,[3] for the sum of $2,850,000.00 (the "Sale Order").[4]

On November 14, 2003, White filed a notice of appeal of the Sale Order, *pro se*,[5]

and elected to have the appeal heard by the District Court. On November 8, 2004, the

Sale Order was affirmed by the District Court. White v. Official Comm. of Unsecured

Creditors (In re Cadkey Corp.), 317 B.R. 19 (D. Mass. 2004) (Gorton, J.). White

appealed further to the First Circuit Court of Appeals. On September 12, 2005, the First

Circuit affirmed the District Court's order. White then filed a petition for writ of certiorari

to the United States Supreme Court, which was denied on February 21, 2006. White

has since filed in the United States Supreme Court a motion for rehearing on the denial

of his petition.

On February 2, 2004, the Debtor filed a motion to convert its case to one under

Chapter 7 of the Bankruptcy Code. The motion was allowed, without objection, on

March 4, 2004. Thereafter, John A. Burdick was appointed as Chapter 7 trustee (the

---

9011.

[3] Kubotek Corporation was not the proposed buyer intially set forth in the Sale Motion. Practice in this district requires that the estate representative, in conjunction with a proposed sale of estate assets, attempt to locate counterbidders for the assets. See Mass. Local Bankr. R. 6004-1(a). The original buyer eventually dropped out of contention, and Kubotek Corporation was the successful bidder.

[4] The Sale Order also established a $250,000.00 reserve to pay for the costs of defending any appeal filed by White.

[5] The appeal was filed *pro se*, notwithstanding the fact that White was then represented by counsel. Indeed, White has filed all subsequent pleadings *pro se*. His attorney filed a motion to withdraw on March 24, 2004. That motion was allowed, without opposition, on April 8, 2004. Yet, all of the filings by White, *pro se*, betray the hand of an individual with a significant amount of legal training – a skill which White does not pretend to have.

4

"Trustee"). On March 19, 2004, the Trustee filed a motion to retain Attorney Michael Goldberg ("Goldberg"), who formerly represented the Creditors Committee, as special counsel to represent the Trustee, *inter alia*, in connection with the appeal by White. White opposed, arguing that such retention would represent a duplication of effort. On July 6, 2004, White filed a second objection to the Trustee's motion to employ special counsel. In that objection, White alleged that Goldberg had made false representations to the Court during the sale hearing. On August 17, 2004, this Court overruled White's objections and granted the Trustee's motion to retain Goldberg as special counsel.

On August 13, 2004, White filed in this Bankruptcy Court a motion to vacate the Sale Order (the "Motion to Vacate"). In the Motion to Vacate, White again claimed that Goldberg, while acting as counsel for the Creditors Committee, and Attorney James Wilton ("Wilton"), counsel for the Debtor, had each defrauded the Court by misrepresenting both what unsecured creditors could expect to receive from the sale and their expected requests for compensation. As grounds for this contention, White relied on statements Goldberg and Wilton had made at the sale hearing in response to an inquiry from the Court as to the likely impact of the sale upon the expected dividend for creditors.[6] White claimed that fees owed to Goldberg and White had consumed *all* of the sale proceeds.

---

[6] The Motion to Vacate reflected White's complete misunderstanding of what the Court had asked at the sale hearing and how Goldberg and Wilton had responded. Furthermore, White misconstrued a later communication from the Trustee to White as to the funds which the Trustee then held on account of the sale proceeds.

5

A hearing on the Motion to Vacate was initially set for September 7, 2004. However, White filed a motion seeking an extension of the hearing date, in order to obtain more affordable air fare to travel to Massachusetts. After further review of the Motion to Vacate in connection with White's request for an extension of the hearing date, this Court concluded that – particularly in light of the frivolous nature of the allegations, the costs to all parties of attending a hearing whose outcome was certain and the pendency of the appeal of the underlying Sale Order before the District Court – the Motion to Vacate could be disposed of expeditiously[7] without the necessity of a hearing. Accordingly, on September 8, 2004, the Motion to Vacate was denied.

Among the various reasons why the Motion to Vacate had no merit, this Court noted that the Trustee's opposition indicated that he held substantial sale proceeds. This Court further emphasized, based on the transcript of the Sale Hearing, that neither Goldberg nor Wilton had ever made any representation as to what dividend would be available for general *unsecured* creditors – only what would be available for creditors. And the Court commented: "Administrative claimants are also creditors who are entitled to share in the proceeds held by the estate."

On September 10, 2004, White moved for reconsideration of the September 8, 2004 order denying the Motion to Vacate (the "Motion for Reconsideration"). In the Motion for Reconsideration, White altered his allegations of what remained in the estate, but continued to claim that the Court had been defrauded. This time, however, he also inserted additional allegations, including, *inter alia*, that other creditors had also

---

[7] See Commw. of P.R.v. SS Zoe Colocotroni, 601 F.2d 39 (1st Cir. 1979).

6

been defrauded, that "appellate issues" had been "concealed," that Kubotek Corporation had somehow participated in a fraud, and that Kubotek Corporation had engaged in sale collusion and the sale had been chilled. The Motion for Reconsideration was denied on September 13, 2004. White filed a notice of appeal to the District Court on September 15, 2004. That appeal was dismissed by the District Court (Gorton, J.). White then moved the District Court for reconsideration. Reconsideration was denied. At that point, White decided to forego an appeal to the First Circuit Court of Appeals and sought to file an appeal directly with the United States Supreme Court. The District Court returned the notice of appeal to White as improperly filed.

But White was not done. On October 12, 2004, White filed another motion, this time seeking that interim fees previously awarded to Goldberg and Wilton[8] be disgorged (the "Motion to Disgorge"). There, he argued that, because this Court commented in its September 8, 2004 order that Goldberg and Wilton were creditors by virtue of their services to the estate, they were in conflict with other creditors for estate funds and therefore no longer "disinterested" persons as required by 11 U.S.C. § 328(c).[9] This Court was able to immediately dispatch that absurd proposition,[10] but became

---

[8] White had filed no objections to their requests for fee allowances.

[9] Section 328(c) provides that the "court may deny allowance of compensation for services and reimbursement of expenses of a professional person . . . if . . . such professional person is not a disinterested person . . . ." 11 U.S.C. § 328(c).

[10] The claims held by court-approved professionals, pursuant to 11 U.S.C. § 503(b), are not those which preclude employment under 11 U.S.C. § 328. See White v. Burdick (In re CK Liquidation Corp.), 321 B.R. 355 (1st Cir. BAP 2005). Furthermore, simple logic would dictate that if a claim for compensation precluded the employment as a court-approved professional,

7

increasingly concerned about the drain of estate assets occasioned by White's
continuing frivolous allegations.[11]  Accordingly, on October 19, 2004, this Court denied
the Motion to Disgorge with the following order (the "Show Cause Order"):

> Denied for the reasons stated in the joint opposition to motion to disgorge
> filed October 18, 2004. The movant is further ordered to appear before
> this court on November 16, 2004 at 11:30 a.m. in Worcester and show
> cause why he should not be sanctioned pursuant to Fed.R.Bankr.P.
> 9011(c)(1)(B), on account of the filing of this frivolous motion.

On October 27, 2004, White filed a response to the Show Cause Order,
essentially repeating the frivolous allegations made in the Motion to Disgorge.  In
addition, on the same day, White filed an appeal to the District Court of denial of the
Motion to Disgorge contained in the Show Cause Order.  That appeal was subsequently
dismissed by the District Court because White failed to pay the filing fee.

On November 15, 2004, the Trustee responded to the Show Cause Order.
There, the Trustee complained bitterly of the costs associated with responding to the
frivolous pleadings filed by White, and he estimated that those costs approximated
**$32,000.00**.  The Trustee requested that any remedies this Court might contemplate

---

such professionals could never be employed, being foreclosed from compensation as soon as
they rendered services on behalf of the party for whom their retention had been approved.

    [11] The estate, by this time, had been forced  to deal with an objection to the Proposed
Bidding Procedures, an objection to the sale, the appeal of the Sale Order, the Motion to
Vacate the Sale Order, the Motion to Reconsider the denial of the Motion to Vacate,  the appeal
of the denial and failure to reconsider the Motion to Vacate, two objections to the retention of
Goldberg as special counsel, and now the Motion to Disgorge.  Each of those motions had or
would entail substantial costs, draining the assets of the estate and correspondingly reducing
any dividend for unsecured creditors.

include a prohibition against White filing any further papers with the Bankruptcy Court and a requirement that White withdraw any pending appeals.

The Show Cause hearing took place on November 19, 2004. Sanctions under Rule 9011 were assessed against White in the amount of $2,500, to be paid to the Trustee (notwithstanding the Trustee's allegations of $32,000.00 already spent in fending off frivolous allegations made by White in various contexts). This Court specifically found that the allegations made in the Motion to Disgorge "were not warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law; that they were presented for an improper purpose, and that is to harass estate functionaries." When White complained that the payment would be difficult in light of his current employment, he was granted sixty (60) days to make the payment. And, because the Court was uncomfortable ordering White not to file any more papers with the Bankruptcy Court (and undoubtedly without jurisdiction to order him to withdraw his appeals), the restraints requested by the Trustee were not imposed.[12] But the Court did warn White that further frivolous allegations would be met by significantly greater sanctions. The sanction of $2,500 (the "Sanctions Order") was due to the Trustee on January 18, 2005.

On November 26, 2004, White appealed the Sanctions Order to the Bankruptcy Appellate Panel for the First Circuit (the "First Circuit BAP"). He did not seek a stay from the First Circuit BAP pending appeal. The First Circuit BAP affirmed the Sanctions

---

[12] In retrospect, this Court's failure to order White not to file any further papers constituted clear error.

9

Order on March 11, 2005. White v. Burdick (In re CK Liquidation Corp.), 321 B.R. 355 (1st Cir. BAP 2005). White then sought further review from the First Circuit Court of Appeals, where the matter (No. 05-9004) is still pending.

On March 16, 2005, approximately four (4) months after the issuance of the Sanctions Order and two (2) months after the sanctions were due, the Trustee filed a motion asking that White be held in civil contempt for failure to comply with the Sanctions Order (the "Contempt Motion"). On April 21, 2005, five (5) months after the Sanctions Order, White filed a motion seeking a stay of the Sanctions Order pending appeal to the First Circuit (the "Stay Motion"). In support, White suggested that the estate would not be prejudiced by the delay because it could offset the sanctions against the dividend which he expected to receive on his unsecured claim. White also alleged that he could not afford to pay the sanctions. This Court scheduled both the Contempt Motion and the Stay Motion for evidentiary hearing on May 23, 2005. On May 3, 2005, White responded by seeking a stay from the First Circuit. On May 25, 2005, the First Circuit court denied his request for a stay, without prejudice, granting White leave to file a renewed motion if this Court issued an order of contempt.[13]

After the hearing on May 23, 2005, this Court also denied White's request for a stay of the Sanctions Order. His suggestion that any dividend on his claim be offset against his sanction was not viable for four (4) reasons. First, the actions of White and Harold Bowers had so drained estate assets that this Court could not longer be certain

---

[13] Notwithstanding this Court's order of May 23, 2005, finding White in contempt, White did not file a renewed motion seeking a stay of the Sanctions Order from the First Circuit until June 3, 2005. The First Circuit has not yet ruled on that motion.

10

what dividend remained available for unsecured creditors. Second, White was, and still
is, a defendant in a voidable preference action brought against him by the Trustee. To
the extent that the Court awarded judgment against White and he failed to pay that
judgment, White's claim against the estate would not be allowable in any amount. See
11 U.S.C. § 502(d). Third, the kind of accommodation sought by White was
inappropriate with respect to an individual otherwise in civil contempt of a court order
over an extended period of time. And fourth, a stay pending appeal is only appropriate
where there is a likelihood of success on the merits of the appeal.[14] This Court had
already found White's arguments frivolous and that finding had been affirmed by the
First Circuit BAP.

At the May 23, 2005 hearing this Court also took evidence on White's ability to
pay the sanctions. White's testimony in this regard was not in any respect credible. He

---

[14] It is well settled that, on request of an appellant, a court should grant a stay of the
order subject to appeal if:

> (1) there is a likelihood of success on the merits of the appeal;
>
> (2) the moving party will suffer irreparable harm if a stay is not granted;
>
> (3) the harm to the moving party if the stay is not granted is greater than the
> injury to the opposing party if the stay is granted; and
>
> (4) the public interest would not be adversely affected by the issuance of the
> stay.

In re Miraj, 201 B.R. 23, 26 (Bankr. D. Mass. 1996); In re Froment, 171 B.R. 170, 172 (Bankr.
D. Mass. 1994); In re Pub. Serv. Co., 116 B.R. 347, 348 (Bankr. D.N.H. 1990); In re Great
Barrington Fair and Amusement, Inc., 53 B.R. 237, 239 (Bankr. D. Mass.1985); see also, Equal
Employment Opportunity Comm'n v. Astra USA, Inc., 94 F.3d 738, 742 (1st. Cir. 1996).
Allowance of the motion requires the presence of each of the foregoing factors, at least in some
degree. In re Miraj, 201 B.R. at 26. Furthermore, application by the trial court of the first factor
(likelihood of success on the merits of the appeal) is best understood as a determination that
the movant has a "substantial case" or a "strong case on appeal" Id. at 26-27.

11

claimed to be unable to pay. Yet, White testified that he worked as a consultant for a law office in California, where he earned the sum of $700 per week. He also testified to an interest in a 200-acre family farm in Oklahoma which he had transferred to his sister for the benefit of their children. Most important, White disclosed that he had title to two automobiles and advised that *each* had a value of $3,500. Based on that testimony, this Court ruled that White had, at all times, the ability to pay the sanction. Accordingly, this Court issued the following order (the "First Contempt Order") on May 23, 2005 (six months from the date of the Sanctions Order), intended, in part, to permit White time to sell one or more of the vehicles to which he had testified:

It is hereby ORDERED that:

1.    White is sanctioned in the additional amount of $1,000.00 on account of said contempt, for a total amount owed of $3,500.00;

2.    White shall pay the amount of $3,500.00 to the Trustee on or before June 17, 2005;

3.    The hearing on the Contempt Motion is continued to June 28, 2005 at 1:30 p.m. in Worcester, Massachusetts. In the event that, on or before June 28, 2005, the Trustee shall advise the Court that the full payment has been timely received, the said continued hearing shall be canceled. In the event that the Court shall, at the June 28, 2005 hearing, find that White has not timely made the payment in full, the Court may assess additional monetary sanctions or order White, there and then, to surrender to the United States Marshal in this District for incarceration until he shall purge himself of civil contempt. In the event that White shall fail to attend the June 28, 2005 continued hearing, the Court may issue a warrant to secure his attendance at a continued hearing thereof.

On June 27, 2005, the Trustee filed a certificate advising that White had failed to comply with the First Contempt Order. On June 28, 2005, White appeared at the scheduled hearing. White claimed, without credibility, that he could not sell the

12

vehicles. There was no basis to believe that he had made any effort to do. Under the

circumstances, his assertions amounted to a refusal. Based on his testimony on May

23, 2005 and June 28, 2005, this Court issued the following order (the "Second

Contempt Order") on June 28, 2005:

> Robert White is committed to the custody of the United States Marshal for
> the District of Massachusetts until the earlier of:1) such time as Robert
> White shall pay the sum of $3,500.00 to attorney John Burdick, as
> Chapter 7 trustee of CK Liquidation Corp., or 2) July 12, 2005. If Robert
> White shall remain in custody of the United States Marshal on July 12,
> 2005, the United States Marshal shall deliver him to this Court sitting in
> Worcester, Massachusetts on July 12, 2005 at 2:00 P.M., at which time
> this Court shall determine what further actions should be taken in respect
> of this matter, including, without limitation, monetary sanctions and/or
> continued incarceration.

White was incarcerated by the United States Marshal at the Wyatt Detention Center in

Rhode Island.[15]

On July 12, 2005, this Court conducted a continued contempt hearing. The

sanction had still not been paid. Furthermore, this Court was unconvinced that White

had made any attempt whatsoever to liquidate the vehicles. Accordingly, on July 12,

2005, this Court entered the following order (the "Third Contempt Order"), after

requesting the Trustee to assist White, if necessary, in selling the vehicles:

---

[15] On June 29, 2005, White filed a so-called Writ of Habeas Corpus under 28 U.S.C. §
2254 in the District Court (4:05-cv-40104-FDS) (the "Habeas Proceeding"), naming as
Respondents this Court, the United States Marshal and the Local Jail in which White was
located. On December 29, 2005, the District Court (Saylor, J.) dismissed the Habeas
Proceeding on various grounds. On January 3, 2006, White sought reconsideration of that
order. Reconsideration was denied on January 6, 2006. On January 12, 2006, White filed an
appeal to the First Circuit Court of Appeals, where the matter is now pending.

Robert White remains committed to the custody of the United States Marshal for the District of Massachusetts until the earliest of :1) such time as Robert White shall pay the sum of $3,500.00 to attorney John Burdick, as Chapter 7 trustee of CK Liquidation Corp; or 2) such time as Robert White shall have liquidated in arms-length sales all motor vehicles to which he has title and remitted the proceeds thereof to attorney Burdick as Chapter 7 trustee; or 3) August 9, 2005. If Robert White shall remain in this [sic] custody of the United States Marshal on August 9, 2005, the United States Marshal shall deliver him to this Court sitting in Worcester, Massachusetts on August 9, 2005 at 2:00 p.m., at which time this Court shall determine what further actions should be taken in respect of this matter, including, without limitation, monetary sanctions and/or continued incarceration.

On August 9, 2005, the Court conducted a further contempt hearing. The assertions made by the parties were no different. At this point, in an attempt to break the stalemate, the Court offered White an alternative. White would be released from incarceration if he would convey the automobiles to the Trustee so that the Trustee could liquidate them. White accepted that alternative, executing hand-drawn bills of sale. White was released from incarceration, and the Court continued the contempt hearing until January 31, 2006 to enable the Trustee to sell the vehicles (the "Fourth Contempt Order").

On January 31, 2006, the contempt hearing was reconvened. The Trustee reported his efforts to sell the vehicles. It is sufficient here to note only that those efforts by the Trustee were substantially below those expected of an estate functionary.[16] Counsel for the Trustee offered to share the blame. The Court accepted the offer and issued an order: 1) purging White of contempt and 2) ordering that each of the fee applications of the Trustee and Counsel for the Trustee would be reduced by

---

[16] The Trustee has since resigned.

14

50% of the sanction originally ordered to be paid by White (the "Order Purging Contempt").

That should have ended the matter. It did not. On February 13, 2006, White filed an appeal to the District Court of all of the orders issued by the Court in connection with its original contempt order (the First Contempt Order of May 23, 2005, the Second Contempt Order of June 28, 2005, the Third Contempt Order of July 12, 2005, the Fourth Contempt Order of August 9, 2005 and the Order Purging Contempt of February 7, 2006).[17] Of course, that appeal entails a filing fee and other costs – which brings this Court to the matter now before it. White asks this Court for leave to permit him to proceed in the District Court appeal in forma pauperis. In support, he submits a form affidavit containing various financial information, including income, expenses and assets. White alleges that his average monthly income for the past 12 months and expected in the month following execution of the affidavit is in the amount of $1,605.00 and that his expenses total $1,195.00.[18] And included in his list of assets are the vehicles which were the subject of the contempt orders, this time valued at "$500" for one and "$3,000-2000" for the other.

---

[17] Since the filing of that appeal and the instant motion, White has filed yet another motion in this Court asking the Court to vacate the November 6, 2003 Sale Order.

[18] Expenses listed for his domestic partner add another $317.00. Her monthly income is listed at $50.00.

II.    **DISCUSSION**

The Bankruptcy Appellate Panel for the First Circuit has recently held that a

qualified debtor's appellate filing fees may be waived pursuant to 28 U.S.C. § 1915.[19]

---

[19] Section 1915 provides, in relevant part:

    (a)    (1) . . . any court of the United States may authorize the
               commencement, prosecution or defense of any suit, action or
               proceeding, civil or criminal, or appeal therein, without
               prepayment of fees or security therefor, by a person who submits
               an affidavit . . . that the person is unable to pay such fees or give
               security therefor. Such affidavit shall state the nature of the
               action, defense or appeal and affiant's belief that the person is
               entitled to redress.
               . . .

               (3) An appeal may not be taken in forma pauperis if the trial court
               certifies in writing that it is not taken in good faith.

    (c)    Upon the filing of an affidavit in accordance with subsection[ ] (a) .
               . . , the court may direct payment by the United States of the
               expenses of (1) printing the record on appeal in any civil or
               criminal case, if such printing is required by the appellate court;
               (2) preparing a transcript of proceedings before a United States
               magistrate judge in any civil or criminal case, if such transcript is
               required by the district court, in the case of proceedings
               conducted under section 636(b) of this title or under section
               3401(b) of title 18, United States Code; and (3) printing the record
               on appeal if such printing is required by the appellate court, in the
               case of proceedings conducted pursuant to section 636(c) of this
               title. Such expenses shall be paid when authorized by the Director
               of the Administrative Office of the United States Courts.

    . . . .

    (e)    . . . .

               (2) Notwithstanding any filing fee, or any portion thereof, that may have
               been paid, the court shall dismiss the case at any time if the court
               determines that –

                    (A) the allegation of poverty is untrue; or

                    (B) the action or appeal –

                        (i) is frivolous or malicious;

16

See Heghmann v. Indorf, et al. (In re Heghmann), 324 B.R. 415 (2005). Based on its

reading of § 1915, the Heghmann Panel went on to note:

> 28 U.S.C. § 1915 provides that a petition to proceed *in forma pauperis* is
> granted or denied at the discretion of the court. However, the court's
> discretion is limited to determinations of poverty and objective good faith.
> Kinney v. Plymouth Rock Squab Co., 236 U.S. 43, 46, 35 S.Ct. 236, 59
> L.Ed. 457 (1915). Good faith is demonstrated when an applicant seeks
> appellate review of any issue that is not frivolous. Coppedge v. United
> States, 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Thus, a
> determination as to whether the Debtor's application to proceed *in forma*
> *pauperis* on appeal should be granted turns on two factors: (1) a showing
> by affidavit that he is unable to pay the filing fees, see Adkins v. E.I.
> DuPont de Nemours & Co., 335 U.S. 331, 339-40, 69 S.Ct. 85, 93 L.Ed.
> 43 (1948), and (2) a showing that the proposed proceedings are not
> frivolous or malicious, see 28 U.S.C. § 1915(e).

Heghmann at 420.

White's request to appear *in forma pauperis* satisfies neither factor. First, he is

not impoverished. His monthly income ($1,605.00) exceeds his monthly expenses

($1,195.00) by $410.00. But second, and more important, the aforesaid history

discloses the frivolous nature of all of White's filings in this Court, inclusive of the

present appeal. As a result of those actions, designed by White to punish the estate

functionaries for his lost opportunity to purchase the Debtor's assets, the estate's

assets will have been greatly drained. When the Court sought to stop his actions by

issuing an order of sanctions, White refused to comply, despite the fact that he actually

testified to ownership of vehicles whose value was twice the amount of the Sanctions

---

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is
immune from such relief.

The statute is not limited to debtor, as opposed to nondebtor, appellants.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Case No. _4: 05CV 40104-FDS_

:49

In Re: ROBERT WHITE, PRO SE,

Petitioner

vs.

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MASSACHUSETTS,
THE HONORABLE HENRY J. BOROFF,
Et. al

**BANKRUPTCY CASE NO. 03-44906-HJB,**

Respondents.

---

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2006, I caused a copy of the Petition for Writ of

Mandamus to be served upon each of the parties listed below.

The Honorable Henry J. Boroff
United States Bankruptcy Court
595 Main Street
Worcester, MA 01608

Joseph B. Collins-Tr
Hendel & Collins P.C.
101 State Street
Springfield, MA 01103

Michael Goldberg
Cohn Whitesell & Goldberg
101 Arch Street
Boston, MA 02110

Damian W. Wilmot
Assistant U.S. Attorney
Moakley Federal Courthouse
1 Courthouse Way
Boston, MA 02210

by:

Robert White - Pro Se
243-A N. Maple
Manteca, CA 95336
Ph: (209) 825-6115